**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) <br> ) <br> v. ) <br> ) <br> **JEAN CARLOS VEGA-ARIZMENDI, et al.,** ) <br> ) <br> **Defendants.** ) <br> ) | Criminal No. 2016-0009-13 |

**Attorneys:**
**Alphonso G. Andrews, Jr., Esq.,**
St. Croix, U.S.V.I.
    *For the United States*

**Robert J. Kuczynski, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Jean Carlos Vega-Arizmendi*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the "Motion to Suppress Statements and Request [for] Evidentiary Hearing" filed by Defendant Jean Carlos Vega-Arizmendi ("Defendant" or "Defendant Vega-Arizmendi") (Dkt. No. 220); the Government's "Response to Vega-Arizmendi's Motion to Suppress Statements" (Dkt. No. 313); and "Defendant's Reply Re: Motion to Suppress" (Dkt. No. 336). For the following reasons, the Court will deny the Motion in its entirety.

## I. BACKGROUND AND EVIDENCE[1]

On August 24, 2016, a First Redacted Superseding Indictment (the "Indictment") was filed against Defendant and fourteen co-defendants. The Indictment charges Defendant with one count of conspiracy to possess a controlled substance with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1), and § 846 (Count 1) and two counts of attempted possession with the intent to distribute cocaine in violation of 21 V.I.C. § 841(a) (Count 4 and Count 5).

A suppression hearing was held on October 4, 2016, at which the Government called three witnesses—Officer Rommel Rios, Officer Peter Mendoza, and Special Agent Brian Gaumond—and both parties introduced exhibits. After the suppression hearing—upon Defendant's request—the Court issued an Order requiring the parties to submit supplemental briefing. (Dkt. No. 354). Pursuant to this Order, on October 18, 2016, Defendant filed his "Supplemental Memorandum *Re: Suppression Hearing on October 4, 2016*" (Dkt. No. 374), and on October 23, 2016, the Government filed its "Response to Vega-Arizmendi's Supplemental Memo re Motion to Suppress" (Dkt. No. 379).

At the October 4 suppression hearing, the following facts emerged. On June 1, 2016, at approximately 6:30 a.m., Officer Rommel Rios, an officer with the Drug Enforcement Agency ("DEA") task force, together with several other officers, executed an arrest warrant at Defendant's residence in Culebra, Puerto Rico. After his arrest, the officers transported Defendant to the pier in Culebra where a police boat was waiting to transport Defendant to Fajardo, Puerto Rico. Once

---

[1] The Court bases the background factual discussion in this section on the record established at the suppression hearing. The Court provides this information solely for the purposes of this pretrial motion, ever mindful that Defendant Vega-Arizmendi is presumed innocent until proven guilty. Most of the facts discussed herein are alleged, but at this stage not conceded or proven beyond a reasonable doubt to the factfinder.

on the boat, but before leaving for Fajardo, Officer Rios gave Defendant—whose first language is Spanish—a form containing the *Miranda* rights in Spanish (Government Exhibit 2A).[2] Officer Rios asked Defendant if he knew how to read and write and Defendant responded in the affirmative. The form was sitting on Defendant's lap, where it was visible to both Defendant and Officer Rios. Officer Rios instructed Defendant to read the first sentence, and when he was finished Officer Rios read aloud the first sentence to Defendant and instructed him to initial the line if he understood it. This process was followed for each line. In addition to initialing each line of the *Miranda* warnings, Defendant also initialed and wrote "si," after the question that Officer Rios translated to mean "Have you understand [sic] your rights?" Finally, Defendant initialed and placed a checkmark next to the paragraph indicating that he had read his rights, understood them, and was willing to answer any question freely and voluntarily, without the presence of a lawyer. Defendant signed the form, and Officer Rios and another officer signed the form as witnesses.

---

[2] Because the form is in Spanish, Officer Rios—whose first language is Spanish—was asked by counsel for the Government to translate the form to English at the suppression hearing, and he did so as follows: "Before I going to ask you any questions, you have to know your rights. . . . [Y]ou have the right to remain silent. . . . [A]nything that you say can be used against you in the court. Before I ask you any questions, you have the right to speak and consult an attorney. . . . You have the right to have an attorney right here, right now, before I ask you any questions, or before they interrogate. If you cannot pay for the services of a lawyer, and even you want to have one, we will, we will get you one before, before asking you any questions. . . . [H]ave you understand [sic] the rights? Are you willing to ask me any questions? . . . [T]hen says renouncing to his right[s], . . . I have been, I read it, or somebody read it, my rights above mention[ed], and I know my rights, at this moment, I am willing to answer freely, voluntary, any question without the presence of a lawyer."

Based on its examination of Government Exhibit 2A, the Court notes that the question Officer Rios testified to mean "Are you willing to ask me any questions?," is more accurately translated as "Are you willing to *answer* any questions?" Officer Rios' translation mistake is of no consequence to the merits of this matter because the *Miranda* form is in Spanish, and Officer Rios read the form to Defendant in Spanish.

3

Defendant—whose name is Jean Carlos Vega-Arizmendi—did not write his initials the same way on each line of the *Miranda* form. Rather, Defendant's initials appear as follows: J.A.V., J.V.A., J.A.V., J.A.V., J.A.V., J.C.V.A., and J.C.V.A. Additionally, Defendant neither initialed nor answered the question asking whether Defendant was willing to answer any questions. Finally, Defendant signed the *Miranda* form "Jean C. Vega."

After signing the *Miranda* form, Defendant asked to speak with Officer Rios, but Officer Rios told him to wait until they arrived in Fajardo. When they arrived in the Fajardo office and after Defendant was provided and ate breakfast, Defendant again asked to speak with Officer Rios. The two men went outside where Officer Rios gave Defendant a cigarette to smoke. Outside, Officer Rios again read through with Defendant the *Miranda* form he had signed earlier; asked him if he understood it; and Defendant answered that he did. Officer Rios informed Defendant that he did not know much about the case and was only there to arrest him. Defendant nevertheless discussed the case with Officer Rios.

Officer Rios testified that during the conversation, Defendant appeared to be relaxed, and at one point the two shared a joke and laughed together. Although during the conversation Defendant indicated that he was suspicious of the other task force officers, Officer Rios told him that the other officers were the same as him. Officer Rios further testified that during the conversation, Defendant appeared to be "a normal person" who could understand the conversation, and Officer Rios did not have any trouble understanding him. Officer Rios summarized this conversation in a report, which was admitted as Government Exhibit 2.

Later that day, Task Force Officer Peter Mendoza with the Puerto Rico Police Department transported Defendant from Fajardo to the federal building in San Juan. There, Special Agent Brian Gaumond of the DEA interviewed Defendant, with Officer Mendoza serving as a translator. At

4

the start of the interview, Officer Mendoza gave Defendant another *Miranda* form, which was in Spanish.³ Officer Mendoza instructed Defendant to read each line and indicate when he had finished. Once Defendant indicated that he was finished with a line, Officer Mendoza would then read the sentence back to him aloud, and Defendant would initial the sentence. A similar process was reported for the last paragraph of the form indicating that Defendant had read his rights or had his rights read to him, he understood his rights, and was willing to answer any question freely and voluntarily without the presence of a lawyer. Officer Mendoza testified that Defendant read this paragraph to himself, and then Officer Mendoza read it aloud to Defendant. After Defendant had read the form, Officer Mendoza asked him if he clearly understood the form and his rights, and Defendant responded in the affirmative. Defendant also signed the form, and Officer Mendoza and Agent Gaumond signed the form as witnesses. The Government introduced the *Miranda* form into evidence as Exhibit 3A.

Unlike the *Miranda* form completed with Officer Rios, in the *Miranda* form completed with Officer Mendoza, Defendant consistently wrote "J.C.V.A." for his initials. Also, Defendant signed the form as "Jean C Vega Arizmendi."

After the *Miranda* form had been completed, Agent Gaumond began questioning Defendant. Officer Mendoza translated the questions, which were in English, to Spanish, and Defendant's answers, which were in Spanish, to English. Officer Mendoza testified that the interview was conducted in a friendly and calm manner and that Defendant did not seem upset but had a normal demeanor. Agent Gaumond testified that Defendant's demeanor was calm and cooperative during the interview. Defendant responded to Agent Gaumond's questions and

---

³ The *Miranda* form Officer Mendoza gave Defendant contained the same language as the form that Officer Rios gave Defendant. (See Government Exhibits. 2A, 3A).

5

appeared to understand them. The interview lasted approximately 30 minutes, during which time Defendant never asked for a lawyer or requested that the interview stop. Agent Gaumond memorialized his interview with Defendant in a report, which was admitted into evidence as Government Exhibit 3.

Regarding Defendant's education, during cross-examination of Officer Rios, Defendant introduced academic transcripts showing Defendant's grades from the first through the eighth grade. (Defense Exhibit A). The Exhibit shows that Defendant was generally a poor student who received mostly D's in seventh grade and all F's in eighth grade, including in the classes of "Ingles" and "Español." (*Id.*). Officer Rios testified on direct examination that Defendant had attended Culebra's public school. The Government also introduced Government Exhibit 4, which (according to Officer Rios' testimony) documents that, from 2007 to 2010, Defendant was enrolled in the Puerto Rico Aviation Maintenance Institute ("PRAMI"). Officer Rios testified that one of the restrictions for the PRAMI program is that students must read and write Spanish and English. Government Exhibit 4 indicates that each year that Defendant was enrolled in the PRAMI he either dropped out or transferred.

## II.     DISCUSSION

Defendant seeks to suppress the statements he allegedly made to law enforcement officers on the day of his arrest. In support of his position, Defendant argues that (1) the *Miranda* warnings Officer Rios provided to Defendant were insufficient; and (2) he did not knowingly and intelligently waive his *Miranda* rights.[4] As set forth below, the Court will reject both of Defendant's challenges.

---

[4] Defendant initially challenged the voluntariness of his purported waiver. (*See* Dkt. No. 220 at 4). However, after the presentation of the evidence at the suppression hearing, Defendant withdrew this argument. (Dkt. No. 374 at 6 n.4).

### A. Applicable Legal Standards

*Miranda v. Arizona*, 384 U.S. 436 (1966) held that the "prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. *Miranda* warnings are required whenever a suspect has been (1) "taken into custody" and (2) subject to "interrogation" by the Government. *Steigler v. Anderson*, 496 F.2d 793, 798 (3d Cir. 1974); *United States v. Dupree*, 617 F.3d 724, 731 n.7 (3d Cir. 2010) (plurality opinion). A person may, however, "waive effectuation of these [*Miranda*] rights, provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444; *see also United States v. Pruden*, 398 F.3d 241, 246 (3d Cir. 2005). "Once a defendant challenges the admissibility of any statements made while in custody, the government must prove [by a preponderance of the evidence] that the defendant was advised of and understood [his] *Miranda* rights and that he . . . validly waived those rights." *United States v. Briscoe*, 69 F. Supp. 2d 738, 741 (D.V.I. 1999), *aff'd in part, rev'd in part on other grounds*, 234 F.3d 1266 (3d Cir. 2000); *see also Colorado v. Connelly*, 479 U.S. 157, 168-69 (1986).

To prove a valid waiver, the Government has the burden of establishing that the waiver was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Pruden*, 398 F.3d at 246 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)) (quotations omitted); *see also United States v. Whiteford*, 676 F.3d 348, 362 (3d Cir. 2012).

To determine whether *Miranda* rights have been voluntarily, knowingly, and intelligently waived, courts must "consider the totality of circumstances surrounding [the defendant's]

7

statement." *Briscoe*, 69 F. Supp. 2d at 741 (quoting *United States v. Tyler*, 164 F.3d 150, 158 (3d Cir. 1998)) (quotations omitted). Courts also must consider "the background, experience, and conduct of the [defendant], as well as any indicia of coercion." *Id*. (citing *Oregon v. Bradshaw*, 462 U.S. 1039, 1046 (1983)) (internal citation omitted). Examples of "traditional" indicia of coercion are the duration and conditions of detention, the attitude of the interrogators, defendant's physical and mental state, and other pressures affecting his powers of resistance and self-control. *Id*. at 741 n.1. "*Miranda* rights will be deemed waived only where the totality of the circumstances reveals both an uncoerced choice and the requisite level of comprehension." *United States v. Sriyuth*, 98 F.3d 739, 749 (3d Cir. 1996) (quoting *Alston v. Redman*, 34 F.3d 1237, 1253 (3d Cir. 1994)) (quotations and brackets omitted).

### B. The Sufficiency of Defendant's *Miranda* Warnings

Defendant argues that the *Miranda* warnings Officer Rios gave to Defendant were insufficient as a matter of law. (Dkt. No 374 at 4-6). Defendant first asserts that he received a written version of the *Miranda* rights in close proximity to a verbal version of the *Miranda* rights that differed from the written form. Defendant argues that the close proximity between the two varying versions of the *Miranda* rights "threatened to obfuscate the warning's meaning." (*Id.* at 4).

Defendant's argument is grounded in his contention that "Officer Rios did not read the advice of rights form verbatim, which meant [Defendant] received two different *Miranda* warnings." (*Id.* at 5). However, the Court finds this assertion to be unsupported by the evidence presented at the suppression hearing. On direct examination, Officer Rios testified that he read Defendant his rights from the same form that Defendant was reading. In describing what transpired, Officer Rios testified that he gave Defendant the *Miranda* form, instructed him to read

it, and told him: "[O]nce you read it, let me know when you finish the first sentence." Officer Rios continued: "He read it, I read it with him . . . ." Officer Rios testified that he then asked Defendant: "Do you understand it Vito?,"[5] and Defendant responded "Yes." This testimony directly cuts against Defendant's assertion that he received two different iterations of his *Miranda* rights.

Moreover, Officer Rios' testimony on direct examination is consistent in this regard with his testimony on cross-examination as evident from the following exchanges between Defendant's counsel and Officer Rios:

> Q: You did not read [the *Miranda* form] aloud to him, is that correct?
>
> A: I hand the form to him, he read a sentence, after that, I read it with him. When he was aware, understand what he just read and what I read to him, I told him "put your initial on the left side of each sentence."
>
> . . . .
>
> Q: When you explained to [Defendant] what was on the [*Miranda* form] did you, can you recall verbatim precisely what you actually said to him regarding each of these rights that are on this form?"
>
> A: The only thing that I said to him was—like I told you—he read it, I read it after he was finished, then . . . have you, uh, have you understand your rights? Yes? He put "si." Then he said, where it said "he leido" (I have [read]) he marked this checkmark, and after that [I told him] "[Defendant] put your signature where it say firma," and he put his signature. After that, nothing else.

In short, Officer Rios testified that for each line on the *Miranda* form, he waited until Defendant indicated he was done reading and then he read that same line aloud to Defendant. The Court finds Offices Rios' testimony in this regard to be credible and uncontroverted. The Court therefore concludes that the evidence does not support Defendant's assertion that "[he] received two different *Miranda* warnings."

---

[5] Officer Rios called Defendant by his nickname, "Vito."

In view of this finding, the Court also rejects Defendant's related assertion that the close proximity between when Defendant appeared to read a line from the *Miranda* form and when Officer Rios read aloud that same line obfuscated the warning's meaning. To the contrary, it is difficult to see how this procedure could do anything but further ensure that Defendant understood his *Miranda* rights. *See United States v. Herrera-Genao*, 419 F. App'x 288, 292-93 (3d Cir. 2011) (upholding district court's holding that defendant was properly advised of his *Miranda* rights where there was testimony that "[defendant] was brought to interrogation, verbally advised as to his *Miranda* rights, and then given a Statement of Rights, which he reviewed and signed").

Even if the testimony was that Officer Rios reiterated the *Miranda* warnings to Defendant in his own words—which it was not—and therefore Defendant received two different versions, Defendant's argument would be rejected on legal grounds. As noted by the Third Circuit in *United States v. Cruz*, 910 F.2d 1072 (3d Cir. 1990), "the Supreme Court [has] explained that *Miranda* warnings do not have to be given in the exact words that the court scribed in its landmark *Miranda* decision." *Id.* at 1078 (citing *Duckworth v. Eagan*, 492 U.S. 195 (1989)). Rather, "[t]he inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.'" *United States v. Warren*, 642 F.3d 182, 184 (3d Cir. 2011) (quoting *Duckworth*, 492 U.S. at 203). The Supreme Court in *Florida v. Powell*, 559 U.S. 50 (2010) reiterated the four familiar *Miranda* warnings as follows:

> [A suspect] must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* at 59 (quoting *Miranda*, 384 U.S. at 479) (quotations omitted, brackets in original).

The Court finds that the *Miranda* form that Officer Rios instructed Defendant to read "reasonably convey[s]" the four *Miranda* warnings set forth by the Supreme Court in *Miranda*. *Warren*, 642 F.3d at 184 (quoting *Duckworth*, 492 U.S. at 203) (quotations omitted); (Government Exhibit 2A). Defendant raises no assertion to the contrary. Moreover, even assuming that Officer Rios reiterated the *Miranda* warnings in his own words, there is no evidence that Officer Rios' reiteration was materially different from the written form given to Defendant. It would be pure speculation to conclude that Officer Rios' verbal recitation failed to reasonably convey the *Miranda* warnings, especially since the uncontroverted testimony is that Officer Rios read from the same printed form that he provided to Defendant. In sum, the Court rejects Defendant's argument that the proximity between Defendant's reading of the *Miranda* form and Officer Rios' recitation of the same form somehow obfuscated the warnings' meaning. (Dkt. No. 374 at 4).[6]

---

[6] Defendant cites *United States v. Connell*, 869 F.2d 1349 (9th Cir. 1989) to support his assertion that "by simply reiterating the *Miranda* warnings in his own words, Officer Rios impermissibly provided an equivocal *Miranda* warning." (Dkt. No. 374 at 5). Defendant's reliance on *Connell* is misplaced. In *Connell*, the defendant was instructed to read a *Miranda* rights form and, while doing so, was verbally read a different version of the *Miranda* rights. *Connell*, 869 F.2d at 1350. After receiving the warnings and signing the advice of rights waiver form, the defendant confessed. *Id.* at 1351. The Ninth Circuit held that defendant's confession must be suppressed because the *Miranda* warnings he received "were confusing and failed clearly to inform him that if he could not afford an attorney he had the right to have an attorney appointed for him prior to interrogation." *Id.* at 1353. In so holding, the Ninth Circuit noted the following: "Although told that he had the right to talk to an attorney before, during, and after questioning, this statement was immediately followed by a strong assertion that such an attorney could not be obtained at the Government's expense. The subsequent statements regarding appointed counsel in both the oral and written warnings—that 'a lawyer *may* be appointed to represent you' (oral) and that if I want but cannot afford a lawyer 'arrangements will be made for me to obtain a lawyer in *accordance with the law*' (written)—did not clearly inform [the defendant] that if he could not afford an attorney one would be appointed for him prior to questioning, if he so desired." *Id.* at 1353 (emphasis in original).

Defendant's reliance on *Connell* is misplaced because the facts in *Connell* are markedly different from the evidence presented here. As discussed above, unlike in *Connell*, there is no basis in the record for the Court to find that Officer Rios reiterated the *Miranda* warnings in such a way as to obfuscate any of the four *Miranda* warnings.

11

Defendant also argues that the *Miranda* rights were insufficient because "Officer Rios minimized the importance of the *Miranda* warnings." (Dkt. No. 374 at 5). Defendant bases this argument on his assertions that Officer Rios told Defendant "that he knew nothing about the case, and that he was only here to arrest him." (*Id.*). Defendant further asserts that Officer Rios "tried to build a rapport with him by relying on the fact that he had previously met and spoken with [him]" and that he might have referred to Defendant as "my friend" during their interactions. (*Id.*).

The Court rejects Defendant's argument that Officer Rios impermissibly minimized the importance of the *Miranda* warnings. To the contrary, the evidence shows that Officer Rios' words and actions were consistent with, and expressed the seriousness of, the *Miranda* rights. As detailed above, the evidence is that Defendant was given a *Miranda* form and instructed to read it; Officer Rios also read the form to him line by line; Defendant initialed each line after indicating that he understood its meaning, wrote "si" further indicating that he understood his rights, and signed the form; and Officer Rios and another officer signed the form as witnesses. This thorough, meticulous, and time-intensive approach to advising Defendant of his *Miranda* rights—by itself—strongly cuts against Defendant's assertion that Officer Rios minimized the importance of Defendant's rights. Further, the Court finds it significant that Officer Rios advised Defendant of his *Miranda* rights not once but twice: Officer Rios first advised Defendant of his rights in Culebra prior to departing for Fajardo, and then advised Defendant a second time in Fajardo before allowing Defendant to talk with him about the case. This is additional evidence which reinforces the conclusion that—contrary to Defendant's argument—Officer Rios's actions communicated to Defendant the importance of the *Miranda* warnings.[7]

---

[7] Defendant relies on *Doody v. Ryan*, 649 F.3d 986 (9th Cir. 2011) for his argument that because Officer Rios minimized the importance of the *Miranda* warnings, the warnings are insufficient as a matter of law. The Court finds that Defendant's reliance on *Doody* is unavailing. In *Doody*, a

Given the weight of the evidence showing that Officer Rios gave the *Miranda* warnings in a manner that appropriately reflected their significance, the Court rejects Defendant's assertion that the *Miranda* warnings are insufficient as a matter of law because Officer Rios minimized their importance. That Officer Rios told Defendant "he knew nothing about the case," "tried to build a rapport with him," and might have referred to Defendant as "my friend" does not alter the Court's conclusion. (Dkt. No. 374 at 5). Nothing prohibits an officer from being cordial, or even friendly, to a suspect before, during, or after administering the *Miranda* warnings. *See Miller v. Fenton*, 796 F.2d 598, 607 (3d Cir. 1986) (holding that a suspect's confession was not involuntary despite the fact that "[the officer's] supportive, encouraging manner was an interrogation tactic aimed at winning [the suspect's] trust and making him feel comfortable about confessing"); *see also United States v. Falciglia,* 421 F. App'x 146, 147-48 (3d Cir. 2008) (holding that the defendant's waiver of his *Miranda* rights was knowing and voluntary even though the officers might have promised the defendant leniency). Moreover, the evidence contains no indication that Officer Rios

---

group of officers questioned a seventeen-year-old (Doody) for thirteen hours overnight. *Id.* at 990. During the interrogation, Doody confessed to participating in a series of murders, and he was eventually convicted. *Id.* However, the Ninth Circuit granted Doody's writ of habeas corpus in part because it found that the he had received inadequate *Miranda* warnings prior to his confession. *Id.* at 1023. Specifically, the Ninth Circuit held that the *Miranda* warnings "were defective because [the officer] downplayed the warnings' significance, deviated from an accurate reading of the *Miranda* waiver form, and expressly misinformed Doody regarding his right to counsel." *Id.* at 1003. As discussed above, the evidence shows that Officer Rios did not deviate from the *Miranda* form and that the *Miranda* form sufficiently contained the requisite warnings—including Defendant's right to counsel.

*Doody* is also unhelpful as to Defendant's remaining contention that Officer Rios minimized the importance of the *Miranda* warnings. In *Doody*, the officer implied to Doody that "the warnings were just formalities" and represented to him on three separate occasions that the warnings were "mutually beneficial" to Doody and the officers. *Id.* at 1003, 1005. Here, Officer Rios never suggested to Defendant that the *Miranda* warnings were mere "formalities" or repeatedly represented that they were "mutually beneficial." To the contrary, as discussed above, Officer Rios' words and actions reflected the importance of the *Miranda* warnings and their appropriate meaning.

communicated to Defendant that because he was his friend and knew nothing about the case Defendant could speak to him without legal consequences. In fact, the evidence shows that Officer Rios informed Defendant *twice* in Spanish as part of the *Miranda* warnings that "anything that you say can be used against you in the court." (*See* Government Exhibit 2A). In short, Defendant's argument that Officer Rios minimized the importance of the *Miranda* warnings fails in light of the evidence.

Based on the foregoing, the Court rejects Defendant's argument that the *Miranda* warnings Officer Rios gave Defendant were insufficient as a matter of law.

### C. Defendant's Waiver of his *Miranda* Rights

Defendant also argues that his statements must be suppressed because the Government failed to meet its burden of establishing that Defendant knowingly and intelligently waived his *Miranda* rights. The Court disagrees and concludes that there is more than ample evidence to establish a knowing and intelligent waiver on both occasions when Defendant signed a *Miranda* form.

As noted above, to prove a valid waiver, the Government must establish by a preponderance of the evidence that the waiver was "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Pruden*, 398 F.3d at 246 (quoting *Moran*, 475 U.S. at 421). To determine whether *Miranda* rights have been knowingly and intelligently waived, courts must "consider the totality of circumstances surrounding [the defendant's] statement." *Briscoe*, 69 F. Supp. 2d at 741 (quoting *Tyler*, 164 F.3d at 158) (quotations omitted).

Here, before each of his interrogations, Defendant was given a *Miranda* form and instructed to read it;[8] the respective officer read the form to Defendant line by line; and Defendant initialed each line. Except for Defendant marking his initials, this process was repeated for the last paragraph of the form, and Defendant signed the form indicating that he understood the rights set forth and was willing to answer questions without the presence of an attorney. Both Officer Rios and Officer Mendoza also asked Defendant if he understood his *Miranda* rights, and both times Defendant verbally responded in the affirmative. After he signed each *Miranda* form, the evidence shows that Defendant engaged in normal conversation during which he and the respective officers had no issues understanding each other, and there was no indication that Defendant was agitated or upset. Indeed, Officer Rios testified that, at one point during his conversation with Defendant, the two shared a joke and laughed together.

The facts presented at the suppression hearing show that Defendant is an individual of at least ordinary intelligence, who can read, write, and understand Spanish.[9] The facts also show that Defendant was provided with a written *Miranda* form, had time to read it, had it read to him, signed the form, and verbally responded that he understood his rights. In light of these facts, the Court finds that the Government has met its burden of showing that Defendant knowingly and intelligently waived his *Miranda* rights.

---

[8] Officer Rios first asked whether Defendant could read and write, and Defendant responded in the affirmative.

[9] Based on the available evidence, the Court concludes that Defendant could read, write, and understand Spanish. Defense Exhibit A indicates that Defendant has completed and passed—albeit with low grades—the seventh grade. Moreover, the Court credits Officer Rios' testimony that Defendant responded affirmatively when asked if he could read and write. This is corroborated by the testimony of Officer Rios and Officer Mendoza that Defendant appeared to read the *Miranda* form to himself when instructed to do so, and the evidence that Defendant engaged in normal conversation with no problems understanding.

15

In this regard, the Court finds the case of *Berghuis v. Thompkins*, 560 U.S. 370 (2010) to be instructive. In *Berghuis*, the suspect was presented with a written *Miranda* form; the officers determined that the suspect could read and understand English by having him read aloud one of the warnings; the officers gave him time to read the form; and the form was read aloud to him. *Id.* at 385-86. However, the suspect in *Berghuis* declined to sign the *Miranda* form; there was conflicting evidence about whether he verbally confirmed that he understood his rights; and the suspect was largely silent during a three-hour interview in which he made incriminating statements. *Id.* at 375. On these facts, the Supreme Court held that "[t]here was more than enough evidence in the record to conclude that [the suspect] understood his *Miranda* rights." *Id.* at 385.

The facts here regarding a knowing and intelligent waiver are even more compelling than those in *Berghuis*. Like *Berghuis*, Defendant was given time to read from a written form and had the form read to him. Although Defendant did not read aloud any portion of the form, Defendant's understanding of Spanish is demonstrated by his education history, his affirmative answer when asked if he could read and write Spanish, and the fact that he had no difficulties carrying on or understanding conversations with Officer Rios and Officer Mendoza. Moreover, while the suspect in *Berghuis* refused to sign the waiver form and there was conflicting evidence as to whether he verbally confirmed his understanding, here Defendant initialed and signed both *Miranda* forms presented to him and verbally responded in the affirmative when asked whether he understood his rights. These facts are therefore more than sufficient for the Court to conclude that the Government met its burden of showing that Defendant's waiver was made knowingly and intelligently. *See Berghuis*, 560 U.S. at 385.

Defendant essentially bases his argument that the Government failed to meet its burden on certain alleged inconsistencies in the first *Miranda* form that Defendant filled out with Officer

16

Rios. (Dkt. No. 374 at 7). Defendant points to the fact that (1) he initialed the same form differently (writing either J.A.V., J.V.A., or J.C.V.A.), and (2) he left unanswered the question "Are you willing to answer any questions?" (Government Exhibit 2A) but signed the bottom of the form indicating, among other things, that "I am willing to answer freely, voluntarily any question without the presence of a lawyer" (*id.*). (Dkt. No. 374 at 8). From this, Defendant argues that "[he] could not initial his name"; that it is reasonable to conclude that he is illiterate; and that "[he] did not understand what he was signing and did not understand what the officers were telling him, including the concept of waiver." (*Id.* at 7-8).[10] Defendant further asserts that his "educational transcript reveals that he was generally a poor student, especially in English and Spanish" and that "[t]here is no evidence he had prior experience with the criminal justice system." (*Id.* at 3). The Court finds these arguments unconvincing.

As a preliminary matter, one can knowingly and intelligently waive his *Miranda* rights without initialing—or even signing—a *Miranda* form. *Berghuis*, 560 U.S. at 385 (finding a valid waiver even though the suspect declined to sign the *Miranda* form). Similarly, one need not read a *Miranda* form to gain a full awareness of the rights being abandoned and the consequences of such a decision. *See United States v. Wauneka*, 842 F.2d 1083, 1088 (9th Cir. 1988) (holding that

---

[10] Defendant also argues that the Court could infer from Defendant's inconsistent initials that "[he] realized, in the middle of filling out the form, that he had incorrectly initialed his name. . . . However, if this is true, then [Defendant] was not paying attention when he started signing the form, and his entire waiver is still, therefore, not intelligent and knowing." (Dkt. No. 374 at 8). The Court disagrees. Even if Defendant was not paying attention to how he wrote his initials— and therefore wrote the letters in a different order—this does not mean that he was not paying attention to his *Miranda* rights. Nor does it mean that Defendant did not have the requisite awareness and understanding of his *Miranda* rights when he signed the waiver or later after Officer Rios went over the *Miranda* form with him a second time. Most importantly, as discussed above, the officers went through a meticulous process in giving Defendant his *Miranda* warnings and Defendant orally acknowledged his understanding. The evidence of record substantially outweighs Defendant's speculation.

the defendant's confession made after receiving an accurate oral statement of *Miranda* rights was admissible). Thus, even if the Court were to find—which it does not—that Defendant is illiterate and did not understand the written *Miranda* forms, the Government has still met its burden because there is evidence that the officers accurately read the *Miranda* form to Defendant and that he verbally indicated that he understood his rights. *See United States v. Velasquez*, 626 F.2d 314, 316, 320 (3d Cir. 1980) (holding that a defendant who did not sign a formal waiver nevertheless waived her *Miranda* rights when she willingly answered questions after acknowledging that she understood her *Miranda* rights).

To the extent—if any—that Defendant's limited educational history, purported illiteracy, inconsistent initials,[11] and failure to respond to one question on the *Miranda* form suggest that Defendant's intelligence is so low that he was unable to comprehend the officers' verbal recitation of his rights, these facts are substantially outweighed by other evidence of Defendant's ability to comprehend. Defendant's affirmative response to Officer Rios' inquiry about whether he could read and write; the fact that he passed the seventh grade; his verbal indications that he understood his *Miranda* rights; and his ability to naturally converse with the officers—to the point of sharing a joke and laughing with Officer Rios—are all facts showing that Defendant has at least the intelligence necessary to comprehend the verbal *Miranda* warnings. *See United States v. Caraballo*, 643 F. App'x 163, 169 (3d Cir. 2016) (upholding finding that defendant, whose first language is Spanish, validly waived his *Miranda* rights which were administered to him in English

---

[11] With regard to the inconsistent initials, Defendant specifically initialed the first *Miranda* form J.A.V., J.V.A., J.A.V., J.A.V., J.A.V., J.C.V.A., and J.C.V.A. While only two of the initials include the letter "C"—which denotes his middle name—and others switch the order of "V" and "A"—Vega-Arizmendi—the Court notes that the letters comprising the initials all relate to Defendant's name: Jean Carlos Vega-Arizmendi.

where "[the defendant] spoke with [the officer] in English throughout the traffic stop, never indicated to [the officer] that he did not understand English or that he did not understand the *Miranda* warnings, and admitted to the District Court that he told [the officer] that he did understand the warnings").[12]

In short, the record contains more than ample evidence showing that Defendant was capable of understanding his *Miranda* rights and that his decision to waive his rights was made knowingly and intelligently. That Defendant inconsistently wrote his initials and left one question regarding his willingness to answer blank while answering another affirmatively—even in light of his limited formal education—does not alter the Court's conclusion in this regard. Under the preponderance of the evidence standard, the totality of the circumstances establish that Defendant's waiver was "made with a full awareness both of the nature of the right being

---

[12] Defendant unpersuasively attempts to analogize the instant facts to those of *United States v. Stevens*, 2008 U.S. Dist. LEXIS 97904 (D.V.I. April 16, 2008). In *Stevens*, an officer read a *Miranda* form to the defendant, which she later signed, and the defendant verbally responded that she understood her rights. *Id.* at 4. Shortly thereafter, the defendant confessed. *Id.* at 5. At the suppression hearing, however, the defendant presented evidence showing that her "I.Q. [was] in the mentally retarded range." *Id.* at *11. The defendant's expert opined that defendant likely did not understand the warnings but instead "tr[ied] to save face by indicating she understood when she really did not." *Id.* at *9. Moreover, the Government's own expert opined that because of the defendant's mental retardation, "it was not possible to refute her claim that she did not understand the *Miranda* warnings." *Id.* at *12. Given this evidence, the district court found that the Government had not met its burden of showing an intelligent and knowing waiver. *Id.*

Here, unlike in *Stevens*, there is no evidence indicating that Defendant is mentally retarded. In contrast to the expert opinions in *Stevens*, Defendant asserts that "the most insightful evidence on [Defendant's] level of intelligence and literacy at the time of his arrest is his original *Miranda* waiver form, which demonstrates that [he] was not able to consistently sign his name correctly." (Dkt. No. 374 at 7). As discussed above, however, any evidence about Defendant's intelligence that can be gleaned from the inconsistencies in Defendant's initialing of the *Miranda* waiver form is substantially outweighed by other evidence in the record. Based on the totality of the circumstances, the Court finds that the Government has proven a valid waiver by a preponderance of the evidence.

abandoned and the consequences of the decision to abandon it." *Pruden*, 398 F.3d at 246 (quoting *Moran*, 475 U.S. 421).

### III. CONCLUSION

In sum, the Court rejects Defendant's contentions that Officer Rios provided him insufficient *Miranda* warnings and that he did not knowingly and intelligently waive his *Miranda* rights. Accordingly, the Court will deny Defendant's Motion to Suppress. An appropriate Order accompanies this Memorandum Opinion.

Date: January 12, 2017  _____/s/_____
WILMA A. LEWIS
Chief Judge