# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Action No. 2016-0009 |
| ) | |
| JEAN CARLOS VEGA-ARIZMENDI, et al., ) | |
| ) | |
| Defendants. ) | |

**Attorneys:**
**Alphonso G. Andrews, Jr., Esq.,**
St. Croix, U.S.V.I.
**Everard E. Potter, Esq.,**
St. Thomas, U.S.V.I.
*For the United States*

**Robert J. Kuczynski, Esq.,**
St. Croix, U.S.V.I.
*For Defendant Jean Carlos Vega-Arizmendi*

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Jean Carlos Vega-Arizmendi's ("Defendant") Motion *in Limine* to Exclude Testimony of Peter Kalme ("Motion") (Dkt. No. 1179) and the Government's Opposition to Defendant's Motion ("Opposition") (Dkt. No. 1193). For the reasons discussed below, the Court will deny Defendant's Motion.

### I. INTRODUCTION

In his Motion, Defendant argues that testimony by Task Force Officer ("TFO") Peter Kalme regarding alleged statements made by Defendant during an interview should be excluded at trial because (1) he has no personal knowledge of Defendant's statements, and (2) the statements cannot be reliably attributed to Defendant. (Dkt. No. 1179 at 2, 3).

## II. DISCUSSION

### A. TFO Kalme's Personal Knowledge

With respect to Defendant's first argument, Defendant states that—although TFO Kalme participated in the interview of Defendant as an interpreter and his testimony relates to statements allegedly made by Defendant during that interview—evidence from the first trial indicates that TFO Kalme has no personal recollection of the interview with Defendant. *Id.* at 3. Defendant asserts that TFO Kalme's "testimony is based solely on a hearsay document"—specifically, a form drafted by Drug Enforcement Administration ("DEA") Special Agent ("SA") Brian Gaumond based on his notes from the interview with Defendant. *Id.* at 2, 3. Based on these assertions, Defendant argues that there is insufficient evidence to support a finding that TFO Kalme has personal knowledge of Defendant's alleged statements, and as such his testimony does not meet the requirements for admissibility established by Federal Rule of Evidence 602. *Id.* at 2.

In its Opposition, the Government argues that, as a participant in the interview of Defendant, TFO Kalme has personal knowledge of Defendant's alleged statements during the interview. (Dkt. No. 1193 at 2). The Government frames Defendant's claim that TFO Kalme has no personal recollection of the interview as a "bald[] assertion" made "[w]ithout citation to any record." *Id.* The Government further argues that, in any event, it would be more appropriate to address the issue of TFO Kalme's personal recollection during trial, at which point counsel for Defendant will have the opportunity to *voir dire* TFO Kalme with respect to the issue of his personal knowledge. *Id.*

Although Defendant argues that evidence from the first trial establishes that TFO Kalme has no recollection of the interview with Defendant, he did not attach any exhibits to his Motion in support of this contention. Defendant did, however, attach excerpts from the transcript of an

October 4, 2016 evidentiary hearing held in this matter during which TFO Kalme testified. (Dkt. No. 1179-1). The Court notes that nothing about the excerpts of the testimony provided by Defendant suggests that TFO Kalme has no personal recollection of the interview with Defendant. At the evidentiary hearing, TFO Kalme was able to describe aspects of the interview and its surrounding circumstances in detail—including the size of the interview room, the lighting conditions and furniture in the room, the other participants in the interview, and specific actions he took during the interview such as providing Defendant with *Miranda* warnings in Spanish. *Id.* at 5:4-6:12). Thus, Defendant has presented no basis upon which to support a finding that TFO Kalme's testimony should be excluded due to lack of personal knowledge. Defendant's request that the Court exclude TFO Kalme's testimony on this basis will, therefore, be denied.[1]

### B. Reliability of TFO Kalme's Testimony

In his second argument, Defendant states that TFO Kalme's testimony should be excluded upon consideration of the factors set forth in *United States v. Nazemian*, 948 F.2d 552 (9th Cir. 1991), and *United States v. Martinez-Gaytan*, 213 F.3d 890, 892 (5th Cir. 2000), because the statements Defendant made through an interpreter cannot reliably be attributed to Defendant. (Dkt. No. 1179 at 2, 3).[2] Specifically, Defendant argues that TFO Kalme's testimony is unreliable because SA Gaumond provided the interpreter; the interpreter was working on behalf of the DEA; the interpreter had "no special qualification or skills in translation or interpretation;" and the report

---

[1] The Court's ruling in this regard does not prevent Defendant from seeking to *voir dire* TFO Kalme at trial regarding his personal knowledge of the interview, or from making objections at trial that Defendant deems appropriate based on TFO Kalme's testimony.

[2] The four factors identified in *Nazemian* are: (1) which party supplied the interpreter; (2) whether the interpreter had any motive to mislead or distort; (3) the interpreter's qualifications and language skills; and (4) whether actions taken subsequent to the conversation were consistent with the statements translated. *Id.*

3

written by SA Gaumond after the interview "contains significant changes from his hand-written notes, establishing that [Defendant's] interrogation has been distorted." *Id.* at 3.

In its Opposition, the Government points out that TFO Kalme *himself* served as Defendant's interpreter during the interview, and that TFO Kalme will testify as the Government's witness. (Dkt. No. 1193 at 6). The Government argues that the four-factor test laid out in *Nazemian* is not applicable here because—unlike *Nazemian* and other cases where an agent was testifying about what an interpreter told the agent that the defendant said—TFO Kalme's testimony does not present the Confrontation Clause and hearsay issues that the *Nazemian* test was designed to address. *Id.*[3]

---

[3] The Government also contends that the Court should not entertain Defendant's arguments concerning the reliability of TFO Kalme's testimony *at all* because Defendant objected to the admission of TFO Kalme's testimony on the same basis during the first trial, and the Court overruled the objection. (Dkt. No. 1193 at 6). The Government argues that the "law of the case" doctrine should operate to preclude Defendant from revisiting this issue as it was decided by the Court during the first trial. *Id.*

The Court notes, however, that the majority of circuits that have addressed the issue have determined that the "law of the case" doctrine does not apply with respect to evidentiary rulings from a previous trial. *See, e.g., United States v. Akers*, 702 F.2d 1145, 1148 (D.C. Cir. 1983) (holding that "[n]o doctrine of the law of the case operates" with respect to evidentiary rulings in a new trial because "'the previous trial [is] a nullity,' [and] the court in the new trial tries 'the case as if it were being tried for the first time . . . .'") (quoting *Hobbs v. Akers*, 191 A.2d 238, 239, *cert. denied*, 375 U.S. 914, (1963)); *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990) ("Rigorously applying the law-of-the-case doctrine [with respect to evidentiary rulings] would undercut the broad discretion that traditionally has been accorded a trial court in these matters."); *Menzer v. United States*, 200 F.3d 1000, 1004 (7th Cir. 2000) ("The law of the case doctrine does not bar a trial court from revisiting its own evidentiary rulings."). As the Court stated at the status conference held on February 13, 2018, the Court is not applying the law of the case doctrine to its evidentiary rulings as a general proposition, and it is therefore incumbent on the parties to raise whatever objections they deem appropriate and want preserved in the context of the second trial of this matter. Accordingly, notwithstanding that Defendant challenged the admission of TFO Kalme's testimony in the first trial, the Court is considering and ruling on Defendant's challenge in the context of the second trial.

In *Nazemian*, the Ninth Circuit considered a claim by Nazemian that trial testimony by a DEA agent about statements Nazemian made during an interview constituted "inadmissible hearsay and violated the confrontation clause because [the DEA agent] was not able to understand her statements directly, but only heard them as translated by an interpreter . . . ." *Nazemian*, 948 F.2d at 525. The Ninth Circuit identified as a threshold matter the issue of "whether the interpreter or Nazemian should be viewed as the declarant. If the statements properly are viewed as Nazemian's own, then there would be no confrontation clause issue since Nazemian cannot claim that she was denied the opportunity to confront herself." *Id.* at 525-26 (footnote omitted). The Court further noted that "[t]his threshold question likewise controls the hearsay analysis. If the statements are viewed as Nazemian's own, they would constitute admissions properly characterized as non-hearsay" under Federal Rule of Evidence 801(d). *Id.* at 526. The *Nazemian* Court then fashioned a four-part test to determine whether an interpreter can properly be viewed as an agent or "language conduit" of a defendant such that the interpreter's statements may be attributed to the defendant—thereby eliminating hearsay and Confrontation Clause concerns in the event that a *third party* testifies about the interpreter's statements. *Id.* at 527.

Unlike the circumstances addressed in *Nazemian*, the matter currently before the Court involves the testimony *of the interpreter* (TFO Kalme) as to what Defendant said, not the testimony of another law enforcement officer as to the interpreter's communication to the officer of Defendant's statements. The Second Circuit has specifically distinguished between the type of scenario presented in *Nazemian* and the one presented here:

> If [the law enforcement agent] had spoken with [the defendant] directly and could himself have testified to [the defendant's] answers, his testimony as to [the defendant's] statements would have been non-hearsay admissions under Fed. R. Evid. 801(d)(2)(A) ("A statement is not hearsay if. . . [t]he statement is offered against a party and is (A) his own statement . . ."). The specter of hearsay arises

5

because [the law enforcement agent] could testify only to what [the interpreter] said [the defendant] had said.

*United States v. Da Silva*, 725 F.2d 828, 830 (2d Cir. 1983).

Because TFO Kalme (the interpreter) will be on the witness stand and can relate to the jury what Defendant told him directly, the hearsay issue at which *Nazemian* and its four-part test are directed is not present. Likewise, because TFO Kalme will testify and be subject to cross-examination, there is no Sixth Amendment Confrontation issue present here. Defendant's reliance on *Nazemian* and its four-factor test is therefore misplaced.

The Court concludes that Defendant's arguments with respect to the reliability of TFO Kalme's testimony are more properly directed at the *weight* that the testimony should be given, rather than the *admissibility* of the testimony. This conclusion finds support in persuasive authority. In *United States v. Mejia*, 600 F.3d 12 (1st Cir. 2010), a detective at the scene of an arrest advised Mejia of his *Miranda* rights in Spanish. *Id.* at 15. The detective and another officer began to ask Mejia questions, which the detective translated. *Id.* at 16. The non-Spanish speaking officer wrote a report two days later, and Mejia's incriminating statements were introduced at trial. *Id.* On appeal, Mejia argued that the district court improperly allowed the detective to testify as to the content of his incriminating statements given that the detective lacked formal training in English-Spanish translation. *Id.* at 19.

The First Circuit found no abuse of discretion where the district court permitted the defense to probe the detective's translation ability, and the detective testified that he was a native Spanish speaker, regularly spoke English and Spanish at home and work, and had served as a translator in several law enforcement contexts. *Id.* The court also concluded that questions regarding the accuracy of a translation are "more properly directed to the weight of the evidence, not its admissibility." *Id*. at 19-20 (citing *United States v. Gonzalez-Ramirez*, 561 F.3d 22, 29 (1st Cir.

6

2009)); *see also United States v. Fujii*, 301 F.3d 535, 540-41 (7th Cir. 2002) (observing that it is the "function of the finder-of-fact to weigh the evidence presented by the parties as to the accuracy of the proffered translation and to determine the reliability of the translation on the basis of that evidence") (quoting *United States v. Zambrana*, 841 F.3d 1320, 1337 (7th Cir. 1988)).

The Court recognizes that "[d]ue process might require a witness to have a threshold capacity to understand Spanish before the witness is permitted to testify about a conversation in that language." *United States v. Silva-Arzeta*, 602 F.3d 1208, 1216 (10th Cir. 2010). Here, the Government represents that TFO Kalme's "native tongue" is Spanish and that "he had been conversing in English for 22 years at the time of the interview" with Defendant. (Dkt. No. 1193 at 1). The Government's representation in this regard is consistent with excerpts of the testimony appended to Defendant's Motion. (Dkt No. 1179-1 at 7:25-8:8). The Government also expects Kalme to testify that "he routinely interprets from Spanish to English and English to Spanish" in his role as a law enforcement officer. (Dkt. No. 1193 at 6). While Defendant maintains that TFO Kalme has no special qualification or skills as an interpreter and suggests that his position with law enforcement might bias his interpretations, the Court concludes that the current record supports a finding that TFO Kalme has the threshold capacity to understand Spanish and English necessary to permit his testimony regarding the interview with Defendant. *See, e.g., Mejia*, 600 F.3d at 19 (officer's testimony regarding statements made by a defendant in Spanish was properly admitted—despite the officer's lack of official training in translation—where he was a native Spanish speaker, spoke both English and Spanish at home, and had served as a translator in several law enforcement contexts). Defendant will have the opportunity to challenge TFO Kalme's translation abilities and the accuracy of his interpretation, and to demonstrate any alleged bias, through cross-examination at trial. *See Silva-Arzeta*, 602 F.3d at 1216 (noting that a defendant's

7

concerns that the officer "may have reported the conversation incorrectly because of his lack of understanding of Spanish or his bias as a police officer . . . are the bread and butter of litigation" and that "[a]lthough there may be inaccuracies in [the officer's] testimony, cross-examination and the presentation of contrary evidence . . . are what we rely on to assess the truth").

In sum, the Court finds that Defendant's reliance on *Nazemian* is misplaced, and that the evidence in the record is sufficient to support a finding that TFO Kalme possessed the threshold language capacities necessary to permit his testimony regarding Defendant's statements. Defendant will have the opportunity to pursue his challenges through the avenue of cross-examination at trial. Accordingly, Defendant's request that the court exclude TFO Kalme's testimony on the basis that it is unreliable will be denied.

### III. CONCLUSION

For the reasons discussed above, the Court will deny Defendant's Motion. Neither basis asserted by Defendant in his Motion warrants the exclusion of TFO Kalme's testimony during the second trial of this matter.

### ORDER

**UPON CONSIDERATION** of Defendant Jean Carlos Vega-Arizmendi's Motion *in Limine* to Exclude Testimony of Peter Kalme (Dkt. No. 1179), and for the reasons discussed herein, it is hereby

**ORDERED** that Defendant's Motion is **DENIED**.

**SO ORDERED**.

Date: March 6, 2018 _____/s/_____
WILMA A. LEWIS
Chief Judge