DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>JEAN CARLOS VEGA-ARIZMENDI, et al., )<br>)<br>Defendants. )<br>_____) | Criminal Action No. 2016-0009 |

**Attorneys:**
**Alphonso G. Andrews, Jr., Esq.,**
St. Croix, U.S.V.I.
**Everard E. Potter, Esq.,**
St. Thomas, U.S.V.I.
    *For the United States*

**Robert J. Kuczynski, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Jean Carlos Vega-Arizmendi*

## MEMORANDUM OPINION AND ORDER

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant Jean Carlos Vega-Arizmendi's ("Defendant") Motion *in Limine* to Preclude Agent Brian Gaumond from Identifying Jean Carlos Vega-Arizmendi at Trial ("Motion") (Dkt. No. 1180) and the Government's Response to Defendant's Motion ("Response") (Dkt. No. 1194). For the reasons that follow, the Court will deny Defendant's Motion.

### I. INTRODUCTION

In his Motion, Defendant requests that the Court preclude Drug Enforcement Administration ("DEA") Special Agent ("SA") Brian Gaumond from identifying Defendant at trial based on Defendant's contention that SA Gaumond's identification is not based on personal knowledge. (Dkt. No. 1180 at 1-2). Specifically, Defendant states that SA Gaumond is expected

to identify Defendant at trial "based on surveillance and personal observation." *Id.* at 1.[1] Defendant asserts that, "at the time [SA] Gaumond purportedly observed [Defendant], he did not know [Defendant's] identity," and was able to identify Defendant later based only on the results of the criminal investigation from which the charges here stem. *Id.* Defendant claims that SA Gaumond's identification of Defendant at trial should therefore be prohibited, as SA Gaumond did not have personal knowledge of Defendant's identity at the time that he was performing surveillance. *Id.* at 2. Defendant also suggests in his Motion that SA Gaumond's identification of Defendant at trial would constitute improper opinion testimony by a lay witness under Federal Rule of Evidence 701. Defendant states that the charges against him in this case arose from SA Gaumond's surveillance of his participation in a number of events, and that "[w]hether [he] is actually the person depicted in the surveillance is a question for the jury." *Id.* at 3.

In its Response, the Government argues that the relevant issue with respect to the admissibility of SA Gaumond's in-trial identification of Defendant is not whether SA Gaumond was able to identify Defendant *by name* while he was performing surveillance on December 15, 2014, but rather whether SA Gaumond "can look at [Defendant] in the courtroom and identify him as the same person he saw, and took photographs of at Chenay Bay . . . ." (Dkt. No. 1194 at 2). Pointing to SA Gaumond's testimony from the first trial, the Government argues that SA Gaumond is able to identify Defendant by observing him in the courtroom as the same individual he saw at Chenay Bay on December 15, 2014, regardless of whether he knew Defendant's name at that point. *Id.* at 2-3. The Government argues that Defendant's Motion should therefore be denied. *Id.* at 3.[2]

---

[1] In its Response, the Government clarifies that the event at issue was surveillance conducted by SA Gaumond at Chenay Bay on December 15, 2014. (Dkt. No. 1194 at 1).

[2] The Government also contends that the Court should not entertain Defendant's arguments with respect to SA Gaumond's identification *at all* because Defendant attempted, unsuccessfully, to

2

## II. DISCUSSION

In support of his positions, Defendant points the Court to *United States v. Vasquez-Rivera*, 665 F.3d 351 (1st Cir. 2011). In that case, the First Circuit considered whether identification testimony offered by Federal Bureau of Investigation ("FBI") Special Agent Christine Segarra was properly admitted at Vasquez-Rivera's trial. SA Segarra had served in an undercover capacity during a child pornography investigation—which included engaging in chat and webcam sessions on the internet under the assumed identity of a 14-year-old girl. *Id.* at 354. At one point during the investigation, a target sent SA Segarra a webcam video of a man masturbating. *Id.* In the video, SA Segarra was "able to see a man wearing red flannel pajamas, his hands and genitalia, and part of the room in the background. However, [she was] not able to see the man's face." *Id.*

Vasquez-Rivera was subsequently charged in the matter. The "ultimate issue" before the jury was whether Vazquez-Rivera was in fact the individual who had been communicating with

---

preclude the identification during the first trial. (Dkt. No. 1194 at 3). The Government argues that the "law of the case" doctrine should operate to preclude Defendant from revisiting this issue as it was decided by the Court during the first trial. *Id.*

The Court notes, however, that the majority of circuits that have addressed the issue have determined that the "law of the case" doctrine does not apply with respect to evidentiary rulings from a previous trial. *See, e.g., United States v. Akers*, 702 F.2d 1145, 1148 (D.C. Cir. 1983) (holding that "[n]o doctrine of the law of the case operates" with respect to evidentiary rulings in a new trial because "'the previous trial [is] a nullity,' [and] the court in the new trial tries 'the case as if it were being tried for the first time . . . .'") (quoting *Hobbs v. Akers*, 191 A.2d 238, 239, *cert. denied*, 375 U.S. 914, (1963)); *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990) ("Rigorously applying the law-of-the-case doctrine [with respect to evidentiary rulings] would undercut the broad discretion that traditionally has been accorded a trial court in these matters."); *Menzer v. United States*, 200 F.3d 1000, 1004 (7th Cir. 2000) ("The law of the case doctrine does not bar a trial court from revisiting its own evidentiary rulings."). As the Court stated at the status conference held on February 13, 2018, the Court is not applying the law of the case doctrine to its evidentiary rulings as a general proposition, and it is therefore incumbent on the parties to raise whatever objections they deem appropriate, and want preserved for the record, in the context of the retrial of this matter. Accordingly, notwithstanding that Defendant challenged the admission of SA Gaumond's identification in the first trial, the Court is considering and ruling on Defendant's challenge in the context of the upcoming retrial.

3

SA Segarra online and who sent her the pornographic video. *Id.* at 357. At trial, the prosecutor asked SA Segarra whether the target of the FBI investigation had been identified. *Id.* She answered: "We ended up identifying him as William Vazquez Rivera." *Id.*

On appeal, the First Circuit determined that this testimony by SA Segarra was admitted in error at trial because (1) "her statements were based in large part on the overall investigation rather than her personal observations," and therefore failed to meet the requirement of Federal Rule of Evidence 602 that testimony be based on a witness' personal knowledge; and (2) her testimony constituted improper opinion testimony by a lay witness under Federal Rule of Evidence 701 as it was neither based on her own perceptions nor "helpful to the jury." *Id.* at 357-58.[3]

The circumstances addressed by the First Circuit in *Vasquez-Rivera* differ from those of the instant case in significant respects. As the First Circuit explained, SA Segarra's testimony

> addressed the ultimate issue before the jury: whether the conduct the government observed on its end of the computer screen could be imputed to Vázquez. *Because the government agents conducting the investigation that led to Vázquez's arrest did not directly observe the individual chatting with [SA] Segarra*, Vázquez's fate depended on whether the government could prove to the jury beyond a reasonable doubt that the evidence it had against him—most of which was circumstantial in nature—placed him at the other end of these online conversations.

*Id.* at 357 (emphasis added). Further, although she played an important role in the investigation, SA Segarra "never personally observed Vázquez chatting on the seized computers . . . nor, for example, was her testimony based on surveillance of the premises that would place Vázquez inside the residence with the computer at the time the chats occurred." *Id.* at 358. In fact, the only

---

[3] Federal Rule of Evidence 602 states, in pertinent part: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Federal Rule of Evidence 701—which relates to opinion testimony by lay witnesses—establishes that "testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

4

opportunity SA Segarra had to physically observe the individual she interacted with online was through the webcam video. *Id.* SA Segarra was unable to "see the man's face, hear the man speak, or otherwise observe distinguishing marks on the man's body" in that video. *Id.* The First Circuit concluded that, given SA Segarra's limited opportunity for personal observation, her "purported identification was largely based on other evidence [from the investigation] that could not support such an identification based on personal knowledge." *Id.*

In contrast, the proffered evidence here and the record from the last trial indicate that SA Gaumond's ability to identify Defendant *is* based on his personal observations—specifically, his observation of Defendant on the beach on December 15, 2014. The DEA report Defendant attached to his Motion indicates that SA Gaumond observed two individuals on Chenay Beach, and that SA Gaumond took photographs of the two individuals. (Dkt. No. 1180-1 at 8). Although the report lists one of these individuals as an "unidentified male," *id.*, this does not negate the fact that SA Gaumond personally observed the individual. During the first trial, SA Gaumond testified that he described Defendant as an "unidentified male" in the report because he was not sure of the individual's *identity* at the time he was performing surveillance. (Dkt. No. 1180-4 at 3). This is no different from an eyewitness who observes a suspect and later identifies that individual based on the earlier observation, although at the time of the observation the eyewitness had no knowledge of the suspect's identity.

In short, Defendant has not established that SA Gaumond did not personally observe Defendant such that he would be unable to identify Defendant at trial—as was the case in *Vazquez-Rivera*. The Court will therefore deny Defendant's request to preclude SA Gaumond's identification of Defendant under Federal Rule of Evidence 602.

The Court further concludes that SA Gaumond's identification of Defendant should not be precluded under Federal Rule of Evidence 701. As noted above, Rule 701 addresses the admissibility of opinion testimony by lay witnesses, and allows for the admission of such testimony where it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. The Third Circuit has recognized that the purpose of the rule is "to protect against testimony that usurps the jury's role as fact finder." *United States v. Fulton*, 837 F.3d 281, 291 (3d Cir. 2016). It accomplishes this objective by allowing a lay witness "to give her opinion or interpretation of an event [only] when she has some personal knowledge of that incident," *and* where that testimony is helpful in that "it aids or clarifies an issue that the jury would not otherwise be competent to understand.'" *Id.* at 290, 292 (quoting *Lauria v. Nat'l R.R. Passenger Corp.*, 145 F.3d 593, 600 (3d Cir. 1998)).

Under certain circumstances, identification testimony by an officer may be inadmissible under Rule 701. Issues most often arise where a testifying officer provides an opinion with respect to whether a defendant is an individual depicted in a surveillance photograph or video. For example, in *United States v. Fulton*, 837 F.3d 281 (3d Cir. 2016), the prosecution elicited testimony from two agents who concluded—based on their comparisons of the physical characteristics of a bank robber depicted in a surveillance video and those of the defendant—that the defendant was in fact the bank robber captured on the surveillance video. *Id.* at 297. The Third Circuit held that this opinion testimony by the agents failed Rule 701(b)'s "helpfulness requirement," as "the agents were no better equipped than the jurors" to compare the physical appearance of the individual in the surveillance video to that of the defendant. *Id.* at 297, 299. With respect to opinion testimony

by an agent identifying a defendant as the person depicted in a surveillance photograph or video, the *Fulton* court explained:

> Lay opinion testimony that aids in the identification of suspects "is particularly valuable where . . . the lay witnesses are able to make the challenged identifications based on their familiarity with characteristics of the defendant not immediately observable by the jury at trial." In other words, "lay witness testimony is permissible where the witness has had sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful."

*Id.* at 297 (quoting *United States v. Langford*, 802 F.2d 1176, 1179 (9th Cir. 1986); *United States v. Beck*, 418 F.3d 1008, 1014 (9th Cir. 2005)) (emphasis removed). The Third Circuit concluded that there was no evidence to suggest that the agents in *Fulton* had "sufficient familiarity" with the defendant's appearance to assist the jury in determining whether the defendant was the individual depicted in the surveillance video. *Id.* at 299. As such, their "testimony performed exactly the function Rule 701 is designed to prevent. They assumed the role of juror in comparing photographs of [suspects] to the surveillance footage and concluding [that the defendant] looked more like the robber than [another suspect]." *Id.*

A different scenario is presented in the instant case. This is not a situation in which an agent offers an opinion about a defendant's identity by comparing the physical characteristics of a defendant to those of an individual depicted in a photograph. Rather, the proffered evidence is that SA Gaumond personally observed an individual on the beach, whom he photographed. SA Gaumond is able to identify that individual as Defendant based on his earlier personal observation. The Government is not precluded from eliciting testimony from SA Gaumond identifying Defendant as the individual who he *personally observed* on the beach. Again, this is akin to typical eyewitness testimony, augmented by a surveillance photograph.

Although eyewitness testimony is "opinion" testimony, it is generally admissible, and is then subject to attack by the opposing party on cross-examination. *See United States v. Barber*,

7

442 F.2d 517, 527 (3d. Cir. 1971) ("Eye-witness identification testimony . . . is an expression of a belief or impression by the witness. . . . [W]here the circumstances surrounding the criminal act gave limited opportunity for observation or utilization of other sensory perception, or where uncertainty is expressed by the witness himself, or exposed by a past history of the witness' statements or demonstrated by cross-examination, the statement of identity should be considered as only an expression of opinion and should be accompanied by appropriate instructions as to its sufficiency and weight. To be sure, the courts have been generous in the admission of eye-witness identification in order to permit the jury to make its own assessment. The emphasis has been on inclusion of evidence, rather than exclusion; on credibility, rather than admissibility.") (footnotes omitted); *United States v. Flenory,* 619 F.2d 301, 305 (3d Cir. 1980) ("[H]aving found that there is an independent basis for the[ witnesses'] in-court identifications, the court must admit them subject to no precondition other than testimony as to the physical facts establishing their opportunity to observe. All else goes to weight, not admissibility.").

The proffered testimony is both rationally based on SA Gaumond's perceptions while conducting surveillance, and is helpful to the jury members who were not present on the beach that day. It therefore meets the requirements of Rule 701, and will not be excluded as improper opinion testimony.[4]

### III. CONCLUSION

Based on the arguments presented and the record before the Court, Rules 602 and 701 of the Federal Rules of Evidence do not preclude SA Gaumond's in-court identification of Defendant

---

[4] There is no contention that SA Gaumond's testimony is based on scientific, technical, or other specialized knowledge such that it would fail to comply with the requirements of Rule 701(c).

as the individual who SA Gaumond personally observed while conducting surveillance on December 15, 2014.[5] Accordingly, Defendant' Motion *in Limine* will be denied.

### **ORDER**

**UPON CONSIDERATION** of the foregoing, it is hereby

**ORDERED** that Defendant Jean Carlos Vega-Arizmendi's Motion *in Limine* to Preclude Agent Brian Gaumond from Identifying Jean Carlos Vega-Arizmendi at Trial (Dkt. No. 1180) is **DENIED**.

**SO ORDERED**.

Date: March 9, 2018 
_____/s/_____
WILMA A. LEWIS
Chief Judge

---

[5] The Court's ruling in this regard does not prevent Defendant from making objections at trial, as he deems appropriate, to the introduction of evidence that departs from the bases for this ruling.